DIAMOND McCARTHY LLP
620 Eighth Avenue, 39th Floor
New York, NY 10018
Tel.: (212) 430-5400
Fax: (212) 430 -5499
Sheila M. Gowan, Esq.
Robert W. Sadowski, Esq.
*Attorneys for the United States of America*
  *ex rel. John Doe*

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JOHN DOE,<br><br>Plaintiff,<br><br>- against -<br><br>COLORADO STATE UNIVERSITY,<br><br>Defendant. | **COMPLAINT**<br><br>**FILED *IN CAMERA* AND UNDER SEAL**<br>**PURSUANT TO 31 U.S.C. § 3730(b)** |

Plaintiff the United States of America *ex rel.* John Doe, by and through John Doe's

attorneys, Diamond McCarthy LLP, alleges for its/his complaint as follows:

### PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.     This is a civil action brought by relator John Doe on his own behalf and on behalf of the

United States of America ("United States") against Colorado State University ("CSU" or

"Defendant") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("False Claims Act"), to

recover damages sustained by, and penalties owed to, the United States as the result of CSU

having knowingly presented or caused to be presented false claims for the payment of funds

disbursed by the United States under agreements negotiated with the Department of Health and

Human Services – Division of Cost Allocation in connection with employee fringe benefit costs

charged and collected under federal grants and contracts, in excess of the amounts to which Defendant was lawfully entitled resulting in the government paying an unfair share of the costs.

2.      In particular, these claims are based on CSU's false and fraudulent statements and claims relating to its Defined Contribution Plan Subsidy for the payment of medical premiums ("DCP").  CSU failed to notify the federal government of material changes that it made to its method of accounting for the DCP so that the government could determine whether to continue to approve the annual fringe rates as submitted by CSU.  As a result, CSU obtained funds in excess of the amounts to which it was entitled, and through CSU's false claims and fraudulent actions, the federal government has been damaged by millions of dollars.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a), 28 U.S.C. §§ 1331, 1345 and 1367.

4.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. §§ 1391(b) and 1391(c), because CSU is located in this District, CSU does business in this District, and because many of the acts complained of herein took place in this District.

### THE PARTIES

5.      Plaintiff is the United States of America on behalf of its agency the United States Department of Health and Human Services ("HHS").

6.      Relator John Doe is an expert in accounting and federal costing rules.  During the period 1999 through 2007, he was the Director of Business and Financial Services for CSU and was responsible for negotiating the agreements with the government.  The Relator is no longer employed by CSU, and currently resides in Wisconsin.

7.      Defendant CSU is an educational institution that is classified as RU/VH (very high

research activity), and is the largest recipient of federal research grants for its veterinarian school

in the United States.

## BACKROUND

**The Federal False Claims Act**

8.      The False Claims Act, as amended, provides, in pertinent part, that:

> any person who (A) knowingly presents, or causes to be presented a false or
> fraudulent claim for payment or approval; B) knowingly makes, uses, or causes to
> be made or used, a false record or statement material to a false or fraudulent
> claim; . . . G) knowingly makes, uses, or causes to be made or used, a false record
> or statement material to an obligation to pay or transmit money or property to the
> Government, or knowingly conceals or knowingly and improperly avoids or
> decreases an obligation to pay or transmit money or property to the Government,

> is liable to the United States Government for a civil penalty of not less than
> [$5,500] and not more than [$11,000]... plus 3 times the amount of damages
> which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

**CSU Is A Person Under the False Claims Act**

9.      Under Colorado state law, the governing board of an institution of higher education may,

by formal action of the board, elect that the institution be excluded from the meaning of

"governmental body" as defined and used throughout the Colorado state procurement code.

C.R.S. § 24-101-301(10)(a).

10.     The CSU Board of Governors is a separate body that is capable of suing and being sued,

holding property and issuing debt.  In contrast, Colorado State agencies are represented by the

Colorado State Attorney General and are prohibited from holding property and issuing debt.

11.     CSU faculty and administrative professionals are not included in the Colorado State civil

servant system, nor are the faculty or administrative professionals included in the Colorado State

fringe benefit systems for health care, life insurance or post-retirement benefits.

3

12.     CSU maintains bank accounts in its own name for the handling of its day to day business operations.

13.     The majority of state funds received by CSU are received indirectly through tuition vouchers from high school graduates who are residents of Colorado, and the tuition vouchers are not recorded as state appropriations on CSU's books and records.

14.     In or about December 5, 2007, the Board of Governors of the Colorado State University System enacted a resolution approving and allowing CSU, *inter alia*, to opt out of the state procurement code and rules and for CSU to create and implement it own procurement rules.

15.     On or about August 11, 2010, the Board of Governors of the Colorado State University System elected and declared that CSU, *inter alia*, shall be excluded from the meaning of the term "governmental body" as defined in Colorado State law provisions C.R.S. § 24-101-301(10) and 24-102-207(1).

16.     In or about January 2008, CSU opted out of the Colorado State procurement code.

## THE FACTS

**CSU's Receipt of Federal Funds for Employee Fringe Benefits**

17.     CSU receives grant and contract funds from the federal government in one of two ways: Either as a lead institution that is awarded a federal grant or contract, or as a sub-recipient of funds from a federal grant or contract awarded to another lead institution.  Also, for fiscal years 2009 and 2010, CSU received $101 million in American Recovery and Reinvestment Act ("ARRA") funds related to State fiscal stabilization as a pass-through from the State of Colorado.

18.     In connection with its receipt of federal funds CSU submits a fringe benefit rate proposal to the HHS – Division of Cost Allocation ("DCA") for negotiation and approval on an annual

4

basis.  Once approved, the fringe benefit rate applies to CSU for those grants and contracts awarded directly to CSU as a lead institution and for those grants and contracts under which CSU is a sub-recipient of funds.

19.     Educational institutions that receive federal grant and contract funds are required to file a Cost Accounting Standards Board ("CASB") DS-2 disclosure statement ("DS-2") with the HHS DCA.

20.     The Office of Management and Budget ("OMB") issues cost principles for all federal agencies that sponsor research, training and other work at institutions of higher education.  Title 2 , subtitle A, chapter ii, part 220 of the Code of Federal Regulations ("OMB Circular A-21") establishes principles for determining costs applicable to grants and contracts with educational institutions.

21.     In the DS-2, the institution must describe itself and its cost accounting practices.  The DS-2 must be amended when an institution's disclosed practices are changed, including when the change is favorable, *i.e.*, less costly to the federal government.  If a change is expected to have a material impact on the institution's negotiated fringe benefit cost rate, the revision must be approved by DCA before being implemented by the institution.

22.     In addition, in the DS-2 an appropriate representative of the institution must certify under penalty of perjury as follows:

> I certify to the best of my knowledge and belief this [DS-2], as amended in the case of a Revision, is the complete and accurate disclosure as of the date of certification shown below by the above-named organization of its cost accounting practices, as required by the Disclosure Regulations (48 CFR 9903.202) of the Cost Accounting Standards Board under 41 U.S.C. § 411.

23.     In CSU's DS-2 with the effective date of November 2, 2001 (the "Nov. 2001 DS-2"),

CSU's Vice-President for Administrative Services made the certification referenced above in

paragraph 22, supra.

24.     In Item No. 1.1.0 in its Nov. 2001 DS-2, CSU described its cost accounting system for

recording expenses charged to federally sponsored agreements as "Accrual." CSU stated that its

"[i]ndirect cost and fringe benefit rates are based on [CSU's] annual financial statements which

include normal accruals for salaries, accounts payable, pensions, post retirement health benefits,

etc."

25.     In Item No. 6.2.1 in its Nov. 2001 DS-2, CSU described the post retirement health

premium plan or the DCP. CSU stated that it "makes monthly contributions to a *trust* to fund a

monthly retiree medical coverage premium subsidy for eventual DCP retirees in an amount equal

to what it would have contributed on average toward [coverage provided through the Colorado

Public Employees' Retirement Association]" (emphasis supplied).

26.     Historically, the DCP was funded as a defined contribution plan, as opposed to on a "pay

as you go" basis. On an annual basis, CSU provided funding to the trust equal to 1% of a

covered DCP participant's salary. Thus, 1% of faculty, administrative and professional staff

salary was included in CSU's calculation of its fringe benefit costs. An actuarial analysis was

performed to determine the level of benefits that would be paid to retirees.

27.     OMB Circular A-21 section C.8 Collection of Unallowable Costs provides that excess

costs due to the failure of an institution to comply with federal cost policies, increased costs due

to noncompliant cost accounting practice used to estimate, accumulate or report costs, and

increased costs resulting from a change in accounting practices must be refunded to the federal

government together with interest.

6

**CSU's Accounting Practices for the DCP from 2003 to 2007**

28.     From to 2003 to June 30, 2007, CSU recorded the DCP funds on its books and records as restricted cash, *i.e.*, as if the funds were held in an irrevocable trust, just as it had represented to the government in its Nov. 2001 DS-2. Consistent with such treatment, CSU also reflected on its balance sheets that the DCP funds were a liability.

29.     As of June 30, 2007, the net asset value and the actuarial valuation of the DCP fund were approximately $19 million and $18 million, respectively.

**CSU's 2007 Change In Accounting for the DCP**

30.     In 2007, GASB Statement 43 mandated a change in the accounting standards used by CSU as they related to the DCP. Specifically, in order for CSU to continue to show the DCP as a liability on CSU's books and records, CSU was required to place the DCP funds in an irrevocable trust, in other words, the funds could not be merely identified as restricted cash.

31.     The issue of whether the DCP funds should be placed in an irrevocable trust was discussed at a CSU cabinet level meeting and disclosed at a CSU employee meeting. CSU chose not to place the DCP funds in an irrevocable trust outside of its control. Instead, CSU made the decision that it was more important for CSU to access the funds than to secure them in an external trust. This decision enabled CSU to use the funds for purposes unrelated to the DCP.

32.     Therefore, CSU chose to treat the funds as unrestricted cash and recorded them on the CSU balance sheet as an unrestricted fund balance, *i.e.*, retained earnings.

33.     As such, CSU reclassified the DCP from restricted cash to an unrestricted fund and showed a balance of net assets of approximately $15.4 million for the DCP.

34.     The impact of this change in accounting was to reclassify the previously revocable trust administered by CSU to an internal unrestricted account available for use by CSU for purposes unrelated to the DCP.

35.     At this point, CSU was required to amend its Nov. 2001 DS-2 and disclose to the federal government that the DCP funds were no longer held in trust for the exclusive benefit of the DCP participants.

36.     However, CSU did not amend its Nov. 2001 DS-2 to identify this change in its accounting nor otherwise disclose to the federal government that the DCP funds were no longer held in trust as it has represented to the government in the  Nov. 2001 DS-2.

37.     As a consequence, HHS was unable to make any adjustments to CSU's fringe rate and require CSU to refund the money because the funds were not being held in an irrevocable trust, as represented.

**CSU's 2008 Change In Accounting for the DCP**

38.     In 2008, CSU implemented GASB Statement 45 and made another material change in its accounting for the DCP.  CSU choose to prospectively implement the DCP by setting the beginning liability at $0, defining its funding policy on a "pay-as-you-go" basis and not counting past contributions from federal agencies in its future calculations.

39.     At this point, CSU was required to amend its Nov. 2001 DS-2 and disclose to the federal government that its change in accounting from a contribution basis (1% of current faculty and administrative salary) to pay-as-you go, *i.e.*, only count payments to retirees as costs to be awarded under CSU's federal grants and contracts.

40.     CSU did not amend its Nov. 2001 DS-2 to identify for the government that this change in its accounting was a material change in its fringe benefit rate for the DCP, and accordingly, there would be lower costs for federal awards.

41.     Indeed, "pay-as-you-go" funding for the DCP would have resulted in a significantly lesser cost (approximately one-half of 1% as opposed to 1%) for federal agencies.  Instead, CSU prepared data showing a doubling or tripling of the amounts to be paid by the federal agencies, which had the effect of causing the federal government to pay a disproportionate share of the DCP costs – greatly in excess of the lower of amounts expensed and amounts funded in the plan.

42.     The impact of this change in accounting was that CSU applied an inconsistent policy for post retirement benefits that resulted in charging the government for costs that had been already paid by the government in prior years and in an amount greatly disproportionate to other funds managed by CSU.

## FIRST CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(A))
### Presenting False Claims for Payment

43.     The United States incorporates by reference the above paragraphs as if fully set forth herein.

44.     The United States seeks relief against Defendant under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

45.     As set forth above, CSU knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented false and fraudulent claims for payment or approval in connection with its receipt of fringe benefits under federal grants and contracts.

46.     HHS paid CSU because of CSU's fraudulent conduct.

9

47.     By reason of CSU's false claims, the United States has been damaged in a substantial amount to be determined at trial.

## SECOND CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(B))
### Use of False Statements

48.     The United States incorporates by reference the above paragraphs above as if fully set forth herein.

49.     The United States seeks relief against Defendant under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

50.     CSU, knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be made and used, false records and statements material to a false fraudulent claim paid or approved by the United States in connection with its receipt of fringe benefits for the DCP under federal grants and contracts.

51.     The United States paid such false or fraudulent claims because of CSU's acts and conduct.

52.     By reason of CSU's conduct, the United States has been damaged in a substantial amount to be determined at trial.

## THIRD CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(G))
### Use of False Statements

53.     The United States incorporates by reference the paragraphs above as if fully set forth herein.

54.     The United States seeks relief against Defendant under Section § 3729(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

55.     As set forth above, CSU, knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, and caused to be made and used, false records and statements, in order to conceal, avoid, or decrease the obligation to pay or transmit money or property to the United States in connection with in connection with its receipt of fringe benefits for the DCP under federal grants and contracts.

56.     CSU failed to pay or transmit money due to the United States because of its acts and conduct.

57.     By reason of the CSU's use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

        WHEREFORE, plaintiff the United States *ex rel.* John Doe requests that judgment be entered in their favor and against CSU as follows:

> (a)     On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1) (A), (B) and (G), for treble the United States' damages, in an amount to be determined at trial, and an $11,000 penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by CSU; and
>
> (b)     Awarding John Doe his relator's share pursuant to 31 U.S.C. § 3730(d)(1) or (2); and
>
> (c)     On the First, Second and Third Claims for Relief, an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d); and

(d)     Awarding such further relief as is proper.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York
January 30, 2012

DIAMOND MCCARTHY LLP
Attorneys for the United States of America
*ex rel.* John Doe


By:    Sheila M. Gowan
       Robert W. Sadowski
       The New York Times Building
       620 8th Avenue, 39th Floor
       New York, New York  10018
       Telephone: (212) 430-5400
       Facsimile: (212) 430-5417
       sgowan@diamondmccarthy.com
       rsadowiski@diamondmccarthy.com


TO:

United States Attorney
for the District of Colorado


Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001