**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-00269-RBJ-MJW

UNITED STATES OF AMERICA,
*ex rel.* EDWIN RUOTSINOJA,

Plaintiff,

v.

COLORADO STATE UNIVERSITY,

Defendant.

---

**MOTION TO DISMISS**

---

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), Defendant, the Board of Governors of the Colorado State University System (the "Board"), sued incorrectly as Colorado State University, by and through its undersigned counsel and the Colorado Attorney General, respectfully moves the Court to dismiss Relator's Amended Complaint as follows:

**INTRODUCTION**

Relator, Edwin Ruotsinoja, brought this action under the *qui tam* provisions of the False Claims Act ("FCA" or "Act"), 31 U.S.C. § 3730, alleging a cause of action against Colorado State University ("CSU") for damages and penalties arising from the alleged presentation of false or fraudulent claims to the United States. Even if CSU were an entity capable of being sued (which it is not), it is not a "person" subject to liability under the *qui tam* provisions of the FCA. Both CSU and the Board (which is an entity that is capable of suing and being sued), are arms of the State of Colorado and therefore not "persons" who can be sued under the *qui tam*

provisions. Even if they were, the Eleventh Amendment of the United States Constitution would bar the suit. For these reasons, the Amended Complaint should be dismissed.

## PROCEDURAL BACKGROUND

Relator filed his Complaint under seal on February 1, 2012. On July 3, 2013, after investigating Relator's allegations, the Government declined to intervene and moved to unseal the Complaint and unrestrict the case. (*See* Mot. July 3, 2013.) On August 5, 2013, the Court granted the motion. (*See* Order Granting Mot. Aug. 5, 2013.) Relator's Amended Complaint was unsealed and served on CSU on December 5, 2013.

## LEGAL STANDARDS

The Board moves this Court to dismiss Relator's Amended Complaint for lack of subject matter jurisdiction. When, as here, a court's subject matter jurisdiction depends upon the same statute that creates the substantive claims in the case, the jurisdictional inquiry is necessarily intertwined with the merits, and a motion to dismiss for lack of subject matter jurisdiction is considered under Fed. R. Civ. P. 12(b)(6) or on a motion for summary judgment, rather than under Fed. R. Civ. P. 12(b)(1). *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1543–44 (10th Cir. 1996) (*citing Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 717 (10th Cir. 2006) ("When subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case, then the jurisdictional question is intertwined with the merits of a case, and a Rule 12(b)(1) motion should be resolved under either Rule 12(b)(6) or Rule 56."). Because Relator's Amended Complaint fails to allege facts sufficient to demonstrate that CSU or its Board is a "person" subject to liability under the *qui tam* provisions of the FCA, Defendant's

Motion is appropriately addressed under Rule12(b)(6) or Rule 56.

The court assesses a motion to dismiss under Fed. R. Civ. P. 12(b)(6) by considering whether the complaint alone is legally sufficient to state a claim for which relief may be granted. *See Hull v. Bd. of Governors of Colo. State Univ. Sys.*, 805 F. Supp. 2d 1094, 1102 (D. Colo. 2011). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper if the complaint lacks allegations regarding all material elements necessary to sustain recovery under a viable legal theory. *See Bryson v. Gonzales*, 534 F. 3d 1282, 1286 (10th Cir. 2008).

**ARGUMENT**

Relator asserts jurisdiction under the FCA, 31 U.S.C. §§ 3729–33, which contemplates a cause of action against those persons who knowingly present false claims for payment to the United States. 31 U.S.C. § 3729. The Attorney General is obligated to investigate violations of the Act and is authorized to bring suit for such violations. 31 U.S.C. §§ 3729, 3730(a). The Act also provides, in subsection 3730(b), for "actions by private persons," known as *qui tam* actions.

However, "subject matter jurisdiction for an FCA claim … depends on the claim being made against a person as that term is interpreted under the FCA." *Sikkenga*, 472 F.3d at 716–17 (*citing Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000)). In *Stevens*, the Supreme Court held that "a private individual has standing to bring suit in federal court on behalf of the United States under the False Claims Act … but that the False Claims Act does not subject a State (or state agency) to liability in such actions." 529 U.S. at 787–88.

Federal courts are courts of limited jurisdiction. *United States ex rel. Precision v. Koch*

*Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992). Jurisdiction is therefore presumed not to exist absent a showing by the party invoking federal jurisdiction. *Id*. "Statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Id*. at 552 (*quoting F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964)). Relator therefore bears the burden of alleging facts essential to show jurisdiction and must support those facts by competent proof. *Id.* at 551; *see also MK-Ferguson Co.*, 99 F.3d 1538, 1543–44. Relator cannot carry this burden. Under well-established legal principles, CSU (and its Board) is an arm of the State of Colorado, and is therefore immune from suit under the *qui tam* provisions of the Act. Relator has not—and cannot—allege or prove any set of facts in support of his claims that would entitle him to relief. Dismissal is therefore proper under Rule 12(b)(6).

## I. The Amended Complaint Should Be Dismissed for Failure to State a Claim for Relief Pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Relator's Amended Complaint Names as a Defendant an Entity that is Incapable of Being Sued.

The only Defendant named in the Amended Complaint is CSU. Relator alleges that CSU violated the Act's Sections 3729(a)(1)(A), (B), and (G) because, among other things, CSU allegedly "presented or caused to be presented false claims for the payment of funds disbursed by the United States under agreements … for employee fringe benefits … in excess of the amounts to which Defendant was lawfully entitled." (*See* Am. Compl. ¶¶ 1, 70–84.)

CSU is not an entity that is capable of being sued. CSU was established under Article VIII of Colorado's Constitution. *See* COLO. CONST. art. VIII, § 5. The Board was established as a separate entity. Colo. Rev. Stat. § 23–31–101; § 23–30–101. While the Board was constituted as "a body corporate, capable in law of suing and being sued," *id.* § 23–30–102, the statutory and

constitutional provisions pertaining to CSU contain no similar grant. *See id.* §§ 23–31–101 to –136; COLO. CONST. art. VIII, § 5(1).[1] Under this structure, CSU is incapable of being sued; claims against the University must be brought against the Board. *See, e.g.*, *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 826 n.1, 827 (10th Cir. 1993) (CSU is incapable of being sued and is "powerless to comply with [a] district court's order;" the State Board of Agriculture, the Board's predecessor in name, was the proper legal entity for suit). By failing to bring his claims against the Board, Relator fails to state a claim upon which relief can be granted. Accordingly, dismissal is warranted. *See Persik v. Colo. State Univ.*, 60 Fed. App'x 209, 211 (10th Cir. 2003) ("Because CSU is not subject to suit … dismissal … is correct as a matter of law.").

**B. CSU is an "Arm of the State"**

Even if Relator had named as a defendant in his Amended Complaint the correct legal entity, dismissal is warranted nevertheless. The Supreme Court has held unequivocally that States and state agencies are not subject to liability under the *qui tam* provisions of the FCA. *Stevens*, 529 U.S. at 787–88. Subsequent to *Stevens*, the Supreme Court addressed the question of whether municipalities, unlike states, should be considered "persons" under the FCA. *Cook Cnty. v. Chandler*, 538 U.S. 119, 122 (2003). The Court held that municipalities and other local government entities such as counties are properly considered "persons" and may be sued under the FCA, *see id.* at 122, thereby creating a dichotomy between a State or an arm of the state, on

[1] The Board was established by statute as CSU's governing body, its "body corporate, capable in law of suing and being sued … having duties and powers to control, manage, and direct the fiscal and all other affairs of the Colorado state university system." Colo. Rev. Stat. §§ 23-30-101, 102(1) (2012). The Board consists of 15 members, nine of which are appointed by Colorado's governor. *Id*. § 23-30-101(1). Six members represent the three constituent CSU universities (CSU-Fort Collins, CSU-Pueblo, and CSU-Global), with one faculty member and one student leader from each university. *Id*. The Board generally oversees the operation of the three constituent CSU campuses, determines tuition rates and salaries, confers degrees, and carries out legal functions. Declaration of Laura Lynn Johnson, at ¶ 3 (hereinafter "Decl." and appended hereto as Exhibit A).

the one hand, and a municipality or a political subdivision, on the other, for purposes of the *qui tam* provisions of the Act. The question presented here, then, is whether CSU is a State agency or instrumentality for purposes of this rule. *Cf. Sturdevant v. Paulsen*, 218 F.3d 1160, 1162 (10th Cir. 2000) (fundamental question is whether the Colorado State Board for Community Colleges and Occupational Education is "more like a political subdivision such as a local school district, or is it an alter ego of the state such as the governing board of a state university system? We conclude it is more akin to the latter, and reverse.").

To determine whether a state-related entity is subject to liability under the FCA, courts in the Tenth Circuit are instructed to apply the "arm-of-the-state" analysis used to determine whether an entity created by a state government is immune from suit under the Eleventh Amendment. *Sikkenga*, 472 F.3d at 717–18 (recognizing the "virtual coincidence of scope" of the statutory inquiry under the FCA and the Eleventh Amendment inquiry) (*quoting Stevens*, 529 U.S. at 780). The "arm-of-the-state" doctrine bestows immunity on entities created by state governments "that operate as alter egos or instrumentalities of the states." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996).

The Tenth Circuit has emphasized that "arm-of-the-state" status must be determined in each case "by reference to the particular state laws characterizing the entity." *Sikkenga*, 472 F.3d at 718 (*quoting Sturdevant*, 218 F.3d at 1164). The court has also explained that to determine whether an entity is an arm of the state

> we engage in two general inquiries. [T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing.

> The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury.

*Watson*, 75 F.3d at 574–75 (internal quotations and citations omitted); *see also Sikkenga*, 472 F.3d at 718. *Cf. Graham v. State*, 956 P.2d 556, 562 (Colo. 1998) ("[T]he appropriate analysis requires examination of (1) how state law characterizes the entity; (2) whether the entity is autonomous and free from the control of the State; and (3) whether a judgment against the entity would ultimately be paid by the State."). These factors are "part of a balancing test … [and] it is therefore necessary to consider all three factors before reaching a conclusion as to the entity's immunity status." *Graham*, 956 P.2d at 562 (*quoting Simon v. State Comp. Ins. Auth.*, 946 P.2d 1298, 1305–06 (Colo. 1997) (noting that no one factor is dispositive)).

An analysis of these factors supports the conclusion that CSU (and its Board) is an arm of the State of Colorado. As an arm of the State of Colorado, CSU (and its Board) is immune from suit under the *qui tam* provisions of the FCA.

**1. State Law Characterizes CSU and the Board as State Entities**

First, the Colorado Constitution and numerous legislative enactments characterize CSU and the Board as state entities.[2] *See* COLO. CONST, Art. VIII, § 5 (expressly declaring CSU a "*state* institution of higher education … subject to the *control of the state*") (emphasis added); Colo. Rev. Stat. § 23–31–101, § 23–30–101, 102. State law also defines state institutions of higher education, including CSU and the Board, as state agencies. *See, e.g.*, Colo. Rev. Stat. § 2-3-103(1)(a) (state auditor statute considering educational institutions like the Board "agencies of the state government"); *id.* § 24-10-103(7) (Colorado Governmental Immunity Act ("CGIA")

[2] A Westlaw search of Colorado's statutes reveals over 130 references to the Board—a list too numerous to include herein. Importantly, the Board and CSU are absent from Colorado's statutory language dealing with political subdivisions and municipalities. *See, e.g.*, Colo. Rev. Stat. § 29-1-202 (defining political subdivisions).

provision which defines "State" as every "board … and every state institution of higher education, whether established by the state constitution or by law"); *id*. § 24-18-102(9) ("state agency" includes state institutions of higher education).[3] Moreover, as a state agency, the Board is entitled to representation by the Colorado Attorney General. *See Hartman v. Regents of Univ. of Colo.*, 22 P.3d 524, 527 (Colo. 2000) (*citing* Colo. Rev. Stat. §§ 24-31-201(3), 23-20-110).

**2. CSU is Not Autonomous and is Subject to Significant State Control**

Second, CSU (and the Board) is a state-created public institution that operates subject to the substantial control and guidance of the State of Colorado. The majority of the Board's members (9 of 15) are appointed by the Governor with the consent of the senate; the remaining 6 are non-voting members (who cannot hold Committee Chair positions) elected from across the statewide university system. Colo. Rev. Stat. § 23-30-101; *see Watson*, 75 F.3d at 575 (University of Utah a state-controlled entity based in part on majorities of the University's and its Regent's boards appointed by the Governor of Utah); *Sturdevant*, 218 F.3d at 1163, 1168–69 (9 of 11 members appointed by governor, and statutory geographical diversity requirements of board's composition is indicative of board's status as a body of statewide central administration rather than a political subdivision). The Board is subject to reporting obligations, oversight, and regulatory control from the Colorado Commission of Higher Education ("CCHE"),[4] whose

---

[3] *See also* Colo. Rev. Stat § 24-6-402(d) (CSU and the Board considered "state public body" for purposes of the Colorado Open Meetings Law); § 24-30-202(13)(b) (state institutions of higher education subject to state's fiscal rules); §§ 24-18-102(9), 24-19-101 (higher education institution employees held to same standards, rules, and penalties as all other state employees); § 24-91-101 (construction contracts with public entities apply to projects financed by higher education).

[4] Subject to approval by the State legislature, CCHE and the Office of State Planning and Budgeting review and approve any the Board construction contract plans for public buildings paid for by state funds exceeding $2 million. *See* Colo. Rev. Stat. §§ 24-37-302, 304. The Board typically receives between $2-5 million each year in funding for controlled maintenance from the State, and in the past 5 years received from the State $4 million for its renovations to CSU's Clark Building and $42 million for construction of its Diagnostic Medical Center. The Board anticipates

members are appointed by the Governor. Colo. Rev. Stat. § 23-1-101 *et seq*.; § 23-31-101. The Board is allocated to the State Department of Higher Education, a State executive branch department. *Id*. § 24-1-110, 114(4)(b). And, the Board's authority to sell, lease, and exchange real property is "subject to [the] reviews and approvals of state agencies." *Id.* § 23-30-102(2.5).

Moreover, the State legislature approves and distributes annual appropriations to the Board. *See id*. §§ 23-18-102 *et seq.* (the College Opportunity Fund or "COF," which defines "state institution of higher education" to include the Board); § 23-1-104 (financing postsecondary education). In 2013, the Board received approximately $110 million in total appropriated funds from the State. (Decl. ¶ 4.) Such monies are held in a statutorily-created state treasury fund and are subject to investment by the state. *Id*. § 23-30-106(1), (3). The Board may only purchase bonds with approval of the State Attorney General, and such bonds are registered in the State's name and deposited with the State Treasurer. *Id*. § 23-31-504.[5]

CSU employs a total of 1,916 "State Classified" employees subject to the State's personnel system, and CSU's president serves as the appointing authority for State Classified personnel. *Id*. § 24-50-101(3)(d); (Decl. ¶ 5.) CSU's employees are public employees under the CGIA, and many participate in the State Public Employees' Retirement Association, which covers state universities. *See id.* § 24-10-103; § 24-51-101(20). In addition, the Board is primarily focused on statewide rather than local affairs as it is charged with developing statewide educational policies and supporting its system of state universities. It also has statewide obligations to perform duties which otherwise would be tasked to the State. *See, e.g.*, *id.* § 23-

receiving approximately $50 million from the State for construction of a new chemistry department building. (Decl. ¶ 6.)

[5] The State guarantees any public bonding payment obligations of the Board. *See* Colo. Rev. Stat. § 23-5-139 (the State higher education revenue bond intercept program). Since 2008, the Board has utilized this program in its bond offerings. (Decl. ¶ 7.)

31-702, 703 and § 23-31-605 (Board through CSU maintains "primary responsibility … for statewide programs of educational noncredit, informal extension" and researches matters pertaining to agricultural and industrial development in the state (Colorado Cooperative Extension Service); *id.* §§ 23-31-201 *et seq.* (CSU responsible for "protecting, promoting, and extending the conservation of the forests in the state" and other duties delegated by the State Forest Service); and *id.* § 23-31-801(2) (CSU charged with coordinating statewide water research through the Colorado Water Institute, an established division of CSU). For all of these reasons, it is clear that the State of Colorado exercises significant supervision and control over CSU and the Board.

**3. CSU Receives Substantial State Funding and Does Not Have the Ability to Provide for its Own Financing**

Third, as detailed above, CSU receives significant State financial support. Based on Fiscal Year 2014, the State's financial support represents approximately 20% of CSU's Education and General Budget ("E&G"). Other E&G funding comes primarily from student tuition and fees, which equate to approximately 60% of the budgeted revenue, with minor amounts relating to interest income, indirect cost recovery, state restricted funds, and federal grants and appropriations comprising the remaining 20%.[6] (Decl. ¶ 8.)

The Tenth Circuit has noted that the level of state funding, although an important consideration, is not determinative. In *Watson*, the court noted that the University of Utah's medical center derived only between 3.5% and 5% of its annual budget from state funding. 75

[6] All funds available to CSU, including tuition, must be expended in accordance with the Fiscal Rules established by the Board. These Fiscal Rules were formulated based upon existing State statutes applicable to CSU. CSU receives federal grant money for particular sponsored projects, making those funds unavailable to pay a liability judgment. Additionally, gift or donation monies are typically restricted for particular purposes and are similarly unavailable to pay a liability judgment. (*See* Decl. ¶ 9.)

F.3d at 576. The rest of the center's funding came from patient billings, meaning that it operated much like a private hospital. *Id.* Nevertheless, the court held that the center was an arm of the state entitled to immunity from suit. *Id.* at 577. The court based its holding on the existence of other factors, including the state's control over the center's operations. *Id.* at 576–77.

Here, CSU receives four times the amount at issue in *Watson*—20% of its annual budget—from the State and remains subject to the State's control.[7] For example, CSU's financial audits remain under the State auditor's control, and its annual financial statements require approval from the State's legislative audit committee. (Decl. ¶ 10.)

The Board has elected to exclude CSU from participation in the risk management fund established by Colo. Rev. Stat. § 24-30-1510. *See* § 24-30-1502(5)(b); (Decl. ¶ 11.) However, even where an institution is self-insured, that factor alone is not definitive in determining arm-of-the-state status. *Hartman*, 22 P.3d at 528.[8] It is the entity's "potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997). In *Doe*, the Supreme Court held the fact that the University of California would be indemnified by the Federal Government for an adverse judgment did not divest the University of its arm-of-the-state status. *See id.* As the Colorado Supreme Court has noted, "[t]he mere fact that an entity

---

[7] *See, e.g.*, Colo. Rev. Stat. § 23-5-130.5 (detailing the State's control over CSU's ability to set and increase its tuition levels).

[8] Courts have held repeatedly that the University of Colorado is an arm of the state, notwithstanding the fact that it is expressly carved out from the Colorado risk management fund by statute. Colo. Rev. Stat. § 24-30-1502(5)(b); *see, e.g.*, *Harrison v. Univ. of Colo. Health Sciences Ctr.*, 337 Fed. App'x 750, 753 (10th Cir. 2009) (claims against University of Colorado barred by Eleventh Amendment immunity); *Sturdevant*, 218 F.3d at 1170 ("the University of Colorado is an arm of the state") (*citing Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir.1989)); *Robinson v. Bd. of Regents of Univ. of Colo.*, 390 F. Supp. 2d 1011, 1016 (D. Colo. 2005) (dismissing claims against the university, noting that "[i]t is well-settled that the University of Colorado is considered a state entity capable of claiming Eleventh Amendment immunity"); *Smith v. Plati*, 56 F. Supp. 2d. 1195, 1201 (D. Colo. 1999) (university an arm of state entitled to immunity); *Hartman*, 22 P.3d at 528 ("10th Circuit cases have consistently treated the University [of Colorado] as an arm of the state for Eleventh Amendment purposes.").

otherwise funded by general fund dollars receives some cash fund receipts does not convert that entity into something other than a state agency." *Graham*, 956 P.2d at 565.

Based on all of the foregoing factors, this Court must find that CSU (and the Board), in character, purpose, and form, is an arm of the State of Colorado that is not subject to Relator's *qui tam* claims. CSU quite clearly is a state entity, and does not possess the "fundamental characteristic of a political subdivision—political control by some community other than the state as a whole." *Sturdevant*, 218 F.3d at 1170.

**C. The Tenth Circuit Recognizes State Universities as "Arms of the State"**

In determining whether CSU is an arm of the State of Colorado, this Court need not write on a blank slate. As the Tenth Circuit has recognized, "[o]ur cases have consistently found state universities are arms of the state." *Watson*, 75 F.3d at 575 (citing cases).[9] While no decision in this judicial district squarely addresses whether CSU or the Board is an arm of the state, the Honorable Philip A. Brimmer came close to reaching such a conclusion in *Hull*, concluding that the Court lacked subject matter jurisdiction over a plaintiff's employment discrimination claim to the extent it sought monetary relief against the three of the defendants—the head of CSU's Department of Microbiology, Immunology, and Pathology, the Dean of the CSU's College of Veterinary Medicine & Biomedical Sciences, and a member of the Rocky Mountain Regional Center of Excellence at CSU—for actions taken in their official capacities on behalf of CSU or

---

[9] *See also Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1559 (10th Cir. 1994) (University of California); *Seibert v. State of Okla*., 867 F.2d 591, 594 (10th Cir. 1989) (University of Oklahoma); *Prebble v. Brodrick*, 535 F.2d 605, 610 (10th Cir. 1976) (University of Wyoming); *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290 (10th Cir. 1971) (University of Kansas and University of Kansas Press); *Korgich v. Regents of N.M. Sch. of Mines*, 582 F.2d 549, 551–52 (10th Cir. 1978) (New Mexico School of Mines). Other jurisdictions reach the same conclusion. *See, e.g.*, *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987) ("It would be an unusual state university that would not receive immunity."); *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301–02 (6th Cir. 1984) (the "great majority of cases addressing … public colleges and universities have found such institutions to be arms of their respective state governments and thus immune from suits").

its divisions. *See Hull*, 805 F. Supp. 2d at 1102–03 ("The immunity conferred by the Eleventh Amendment extends to a state and its instrumentalities, including state agencies.")

Moreover, Colorado's other public universities and related boards have been held to be state entities immune from suit. *See, e.g.*, *Hartman*, 22 P.3d at 526–27 (University of Colorado is an "arm of the state" not subject to suit under § 1983); *Graham*, 956 P.2d at 565–66 (University of Northern Colorado is a state entity entitled to immunity).[10]

In short, the overwhelming weight of authority supports a conclusion that CSU, like other state universities, is an arm of the State of Colorado.

**D. CSU is not a "Person" Subject to *Qui Tam* Liability**

As an arm of the State of Colorado, CSU cannot be sued under the *qui tam* provisions of the FCA. *See Stevens*, 529 U.S. at 787–88. The courts, following the Supreme Court's instruction in *Stevens*, have dismissed *qui tam* actions filed against state universities or components of those universities, concluding that such state entities are not "persons" subject to liability under the *qui tam* provisions of the Act. *See, e.g.*, *United States ex rel. Jones v. Univ. of Utah Health Sciences Ctr.*, 2013 WL 5372609, at *2 (D. Utah Sept. 24, 2013) (dismissing action against state university's departments because there was "no question" that each was a state entity and "therefore not 'persons' under the FCA"); *United States ex rel. Burlbaw v. Regents of New Mexico State Univ.*, 324 F. Supp. 2d 1209, 1212 (D.N.M. 2004) (research institution, a division of New Mexico State University, was not a "person" subject to FCA liability); *United States v. Solinger*, 457 F. Supp. 2d 743, 755 (W.D. Ky. 2006) (university fund and foundation

[10] *See also Sturdevant*, 218 F.3d at 1164 (Colorado State Board for Community Colleges and Occupational Education is an arm of state); *Hamilton Manuf. Co. v. Trustees of the State Colleges in Colo.*, 356 F.2d 599, 600–01 (10th Cir. 1966) (action against Trustees of State Colleges in Colorado barred by the Eleventh Amendment where, despite its corporate designation, board was an integral part of the state's public school system, appointed by the governor with senate approval, and was supported by state funds).

were not "persons" subject to FCA liability where each was governed by the University of Louisville, "a Kentucky state agency to which sovereign immunity applies").

Under *Stevens* and its progeny, neither CSU nor the Board is a "person" subject to liability under the FCA. Accordingly, the Amended Complaint should be dismissed.

**II. This Court Lacks Submit Matter Jurisdiction over Relator's Claims Pursuant to Fed. R. Civ. P. 12(b)(1).**

Relator's Amended Complaint is also subject to dismissal pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear this case under the Eleventh Amendment's grant of sovereign immunity to the States. U.S. CONST., amend XI. The Eleventh Amendment bars suits in federal court against a state by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Eleventh Amendment immunity extends to a state and its instrumentalities, including state agencies. *See Northern Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006); *Hull*, 805 F. Supp. 2d at 1102–03 (immunity extends to the state, its instrumentalities, and its officers in their official capacities). Colorado has not waived its Eleventh Amendment immunity. *See Griess v. Colo.*, 841 F.2d 1042, 1044–45 (10th Cir. 1988) (CGIA does not waive the State's Constitutional immunity).

The Supreme Court in *Stevens* did not reach the question of whether the Eleventh Amendment bars *qui tam* actions under the FCA against a state or state entity in federal court, but expressed its "serious doubt on that score." *See* 529 U.S. at 787. Lower federal courts have held that the Eleventh Amendment provides immunity from *qui tam* suits. *See, e.g., United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279, 294 (5th Cir. 1999) ("[W]e hold that when the United States has not actively intervened in the action, the Eleventh Amendment bars qui tam plaintiffs from instituting suits against the sovereign states in federal court.").

The United States has declined to intervene in this suit under the *qui tam* provisions of the FCA. Relator's claims, whether brought against CSU or the Board, are claims against an arm of the State of Colorado that is immune from suit under the Eleventh Amendment. Here, as in *Foulds*, the Court lacks subject matter jurisdiction over Relator's claims and the Amended Complaint should be dismissed. *See id.* at 294–95.

**CONCLUSION**

For all of the foregoing reasons, Defendant's Motion to Dismiss should be granted, and Relator's Amended Complaint should be dismissed.

Respectfully submitted this 16th day of January, 2014.

HOGAN LOVELLS US LLP

/s/ Michael C. Theis
Michael C. Theis, Special Assistant Attorney General
Nicholas M. DeWeese
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, CO 80202
Telephone: (303) 899-7300
michael.theis@hoganlovells.com
nicholas.deweese@hoganlovells.com

Michael J. Vernick, Special Assistant Attorney General
Marta A. Thompson
Hogan Lovells US LLP
555 13th Street, N.W.
Columbia Square, Suite 1300
Washington, D.C. 20004
Telephone: (202) 637-5878
michael.vernick@hoganlovells.com
marta.thompson@hoganlovells.com

*Attorneys for Defendant Board of Governors of the Colorado State University System*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of January, 2014, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Robert Wayne Sadowski: rsadowski@sflawgroup.com

Amanda Adams Rocque: amanda.rocque@usdoj.gov; USACO.ECFCivil@usdoj.gov

/s/ Michael C. Theis
Michael C. Theis